UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOUAD MAKSOUD and SAMAR KLEIB, Plaintiffs, v. U.S. DEPARTMENT OF STATE, *et al.*, Defendants. | Civil Action No. 20-1849 (TSC) |

## <u>MOTION TO DISMISS</u>

Defendants in the above-captioned action, by and through undersigned counsel, respectfully move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss this action for the reasons in the accompanying Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss.

Dated: October 21, 2020

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:  */s/ Sean Tepe*
SEAN M. TEPE, DC Bar #1001323
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
(202) 252-2533
sean.tepe@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOUAD MAKSOUD and SAMAR KLEIB, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF STATE, *et al.*, <br><br> Defendants. | Civil Action No. 20-1849 (TSC) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

BACKGROUND .................................................................................................................... 2

    A.  Plaintiffs' Visa Application................................................................................ 2

    B.  Presidential Proclamations .............................................................................. 2

LEGAL STANDARDS ........................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

  I.   Plaintiffs Lack Standing and the Court Lacks Subject Matter Jurisdiction ........................ 5

  II.  Plaintiffs Fail To State a Claim.......................................................................... 7

    A.  Plaintiffs' Claims Are Barred By the Doctrine of Consular Nonreviewability ............... 7

    B.  Plaintiffs fail to state claims under the APA .......................................................... 9

      1.  Count I ............................................................................................... 10

      2.  Count III ............................................................................................. 11

    C.  Plaintiffs fail to state a due process claim ......................................................... 14

CONCLUSION.................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   140 S. Ct. 2082 (2020) .............................................................................. 15

*Akinseye v. District of Columbia*,
   339 F.3d 970 (D.C. Cir. 2003) .................................................................... 4

*Am. Tort Reform Ass'n v. OSHA*,
   738 F.3d 387 (D.C. Cir. 2013) .................................................................. 12

*Ark Initiative v. Tidwell*,
   749 F.3d 1071 (D.C. Cir. 2014) .................................................................. 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 5

*AT&T v. EEOC*,
   270 F.3d 973 (D.C. Cir. 2001) .................................................................. 14

*Azar v. Allina Health Servs.*,
   139 S. Ct. 1804 (2019) .............................................................................. 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 5

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................................................. 10

*Catawba County v. EPA*,
   571 F.3d 20 (D.C. Cir. 2009) .................................................................... 12

*Cement Kiln Recycling Coal. v. E.P.A.*,
   493 F.3d 207 (D.C. Cir. 2007) .................................................................. 13

*Cf. Pai v. U.S. Citizenship & Immigration Servs.*,
   810 F. Supp. 2d 102 (D.D.C. 2011) ........................................................... 6

*CREW v. DHS*,
   387 F. Supp. 3d 33 (D.D.C. 2019) ........................................................... 10

*Dalton v. Specter*,
   511 U.S. 462 (1994) ................................................................................. 13

ii

*EEOC v. St. Francis Xavier Parochial School,*
   117 F.3d 621 (D.C. Cir. 1997) ........................................................................ 5

*Florida Audubon Soc. v. Bentsen,*
   94 F.3d 658 (D.C. Cir. 1996) .......................................................................... 7

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) ..................................................................................... 13

*Harisiades v. Shaughnessy,*
   342 U.S. 580 (1952) ....................................................................................... 8

*Haynes v. Navy Fed. Credit Union,*
   825 F. Supp. 285 (D.D.C. 2011) .................................................................... 6

*Herbert v. Nat'l Acad. of Scis.,*
   974 F.2d 192 (D.C. Cir. 1992) ....................................................................... 4

*Hohri v. United States,*
   782 F.2d 227 (D.C. Cir. 1986) ....................................................................... 4

*Holistic Candlers & Consumers Ass'n v. FDA,*
   664 F.3d 940 (D.C. Cir. 2012) ..................................................................... 14

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,*
   456 U.S. 694 (1982)). ................................................................................... 4

*Jafari v. Pompeo,*
   Civ. A. No. 19-1819, 2020 WL 2112056 (D.D.C. May 3, 2020) ................... 9

*Joorabi v. Pompeo,*
   Civ. A. No. 20-108, 2020 WL 2527209 (D.D.C. May 17, 2020) ................... 9

*Kangarloo v. Pompeo,*
   Civ. A. No. 20-00354, 2020 WL 4569341 (D.D.C. Aug. 7, 2020) ................ 9

*Kiyemba v. Obama,*
   555 F.3d 1022 (D.C. Cir. 2009) ................................................................... 15

*Kleindienst v. Mandel,*
   408 U.S. 753 (1972) ..................................................................................... 14

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) ....................................................................................... 4

*Landon v. Plasencia*,
  459 U.S. 21 (1982) ................................................................................................ 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 4, 5, 7

*Nat'l Mining Ass'n v. McCarthy*,
  758 F.3d 243 (D.C. Cir. 2014) .............................................................................. 12

*Nat'l Res. Def. Council v. EPA*,
  643 F.3d 311 (D.C. Cir. 2011). ............................................................................. 11

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ................................................................................................ 10

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
  797 F.3d 1087 (D.C. Cir. 2015) .............................................................................. 9

*Rafeedie v. I.N.S.*,
  880 F.2d 506 (D.C. Cir. 1989) .............................................................................. 15

*Saavedra Bruno v. Albright*,
  197 F.3d 1153 (D.C. Cir. 1999) .......................................................................... 7, 8

*Scolaro v. D.C. Bd. of Elections & Ethics*,
  104 F. Supp. 2d 18 (D.D.C. 2000) .......................................................................... 4

*Shekoyan v. Sibley Int'l Corp.*,
  217 F. Supp. 2d 59 (D.D.C. 2002) .......................................................................... 4

*Smirnov v. Clinton*,
  806 F. Supp. 2d 1 (D.D.C. 2011) .......................................................................... 15

*Tingzi Wang v. United States Citizenship & Immigration Servs.*,
  375 F. Supp. 3d 22 (D.D.C. 2019) ........................................................................ 15

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) .......................................................................................... 13

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) ................................................................................................ 8

*United Techs. Corp. v. EPA*,
  821 F.2d 714 (D.C. Cir. 1987) .............................................................................. 12

*Valero Energy Corp. v. EPA,*
   927 F.3d 532 (D.C. Cir. 2019) ............................................................... 14

*Van Ravenswaay v. Napolitano,*
   613 F. Supp. 2d 1 (D.D.C. 2009) ............................................................ 8

*Verdugo-Urquidez,*
   494 U.S. 259 (1990) .............................................................................. 15

Statutes

5 U.S.C. § 551(13) ..................................................................................... 10

5 U.S.C. § 701(a)(2) ................................................................................... 9

5 U.S.C. § 704 ........................................................................................... 10

5 U.S.C. § 706 ........................................................................................... 11

5 U.S.C. § 706(2)(D) .................................................................................. 11

8 U.S.C. § 1182(f) .................................................................................. 3, 13

8 U.S.C. § 1185(a) ...................................................................................... 3

 Regulations

Proclamation No. 10014, 85 Fed. Reg. 23,441 (April 27, 2020) ...................... 2, 3, 9, 13

Proclamation No. 10052, 85 Fed. Reg. 38,263 (June 25, 2020) ................................. 3, 6

Defendants U.S. Department of State ("State"); U.S. Consulate in Beirut, Lebanon; Mike Pompeo, in his official capacity as Secretary of State; and Dorothy Shea, in her capacity as Ambassador of the U.S. Consulate in Beirut, hereby move to dismiss Plaintiffs' Amended Complaint (ECF No. 8).

Plaintiffs, citizens of Lebanon, initially sued Defendants in a bid to compel the adjudication of Plaintiffs' diversity visa applications. *See generally* Complaint, ECF No. 1. Prior to Defendants' deadline to answer or respond to the Complaint, State issued diversity visas to Plaintiffs. The favorable adjudication of the visa applications mooted the Complaint, and in most circumstances would have yielded a voluntary dismissal of this litigation. Plaintiffs, however, refused to dismiss. In response to the Court's order to show cause why the original Complaint should not be dismissed, Plaintiffs did not directly answer the Court's order, but instead they filed an Amended Complaint. *See* ECF No. 8. Plaintiffs, with diversity visas firmly in hand, now wish to challenge the fact that their visas are subject to a presidential proclamation that restricts entry until December 31, 2020. Plaintiffs do not challenge the proclamations themselves but rather the discretionary decision not to grant a national interest exception ("NIE") to or waiver of the proclamation's entry restrictions that would allow Plaintiffs to enter the United States more promptly.

Plaintiffs' Amended Complaint should be dismissed on any one of a number of grounds. For one, Plaintiffs lack standing. They have not alleged injury in fact because they hold valid diversity visas that do not expire until months after the proclamation's current entry restrictions end in roughly two months. For another, Plaintiffs' claims are barred by the doctrine of consular nonreviewability. Plaintiffs amended their complaint because they are dissatisfied with a consular decision to grant a visa without an exception or waiver to entry restrictions, but such decisions are

not reviewable pursuant to the doctrine.   Furthermore, Plaintiffs' two claims under the Administrative Procedure Act ("APA") fail for a number of pleading shortcomings as well as the fact that the APA does not provide judicial review of discretionary agency action.   The national interest exception is explicitly a discretionary determination.   Finally, Plaintiffs fail to state a due process claim because Plaintiffs do not have a constitutional right to a diversity visa or the procedures employed in issuing a visa.

## BACKGROUND

### A.   Plaintiffs' Visa Application

Plaintiffs Fouad Maksoud and Samar Kleib, husband and wife, are citizens of Lebanon. Am. Compl. ¶¶ 1-2.   On May 7, 2019, Maksoud was notified that he had been selected in the Diversity Immigrant Visa Program for Fiscal Year 2020.   *Id*. ¶ 5.   This program does not award immigrant visas but instead provides the opportunity to apply for an immigrant visa.   *Id*. ¶ 7. Plaintiffs submitted their visa applications on February 15, 2020.   *Id*. ¶ 12-13.   As part of the application process, Plaintiffs interviewed with a consular officer at the U.S. Embassy in Beirut, Lebanon, on May 20, 2020.   *Id*. ¶ 15.   On September 17, 2020, diversity visas were issued to Plaintiffs subject to Presidential Proclamation 10014.   *Id*. ¶ 19.

### B.   Presidential Proclamations

Plaintiffs' diversity visas were issued subject to Presidential Proclamation 10014.   *Id*. ¶ 20. Proclamation 10014 was signed by the President on April 22, 2020.   *See* Presidential Proclamation 10014, "Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak," 85 Fed. Reg. 23,441 (Apr. 27, 2020).   This proclamation temporarily suspended for 60 days the entry of certain aliens as immigrants to the United States.   The President issued Proclamation 10014 to address the damage to the economy caused by COVID-19 in the United States, especially the rising

unemployment rate from efforts necessary to mitigate its spread. *Id.* It was issued "mindful of the impact of foreign workers on the United States labor market, particularly in an environment of high domestic unemployment and depressed demand for labor," as well as "conserv[ing] critical State Department resources so that consular officers may continue to provide services to United States citizens abroad." *Id.* "[W]ithout intervention, the United States faces a potentially protracted economic recovery with persistently high unemployment if labor supply outpaces labor demand." *Id.*

On June 22, 2020, the President signed Proclamation 10052, which modified and extended the entry restrictions under Proclamation 10014 through December 31, 2020. *See* Presidential Proclamation 10052, Suspension of Entry of Immigrants and Nonimmigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak, 85 Fed. Reg. 38,263 (June 25, 2020). Exercising the authority under, *inter alia*, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(f) and § 1185(a), the President "determined that the entry, through December 31, 2020, of certain aliens as immigrants and nonimmigrants would be detrimental to the interests of the United States." *Id.*

Proclamation 10014, as extended by Proclamation 10052, includes exceptions to the entry restrictions, including an exception for individuals whose "entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees." *See* Proclamation 10014, § 2(b)(ix). The "consular officer shall determine, in his or her discretion, whether an immigrant has established his or her eligibility for an exception." Proclamation 10014, § 3(a). State posted guidance on its website providing a "non-exclusive list

of the types of travel that may be considered to be in the national interest, based on determinations made by the Assistant Secretary of State for Consular Affairs."[1]

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement ... no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  Although "detailed factual allegations" are not

---

[1]  *See* https://travel.state.gov/content/travel/en/News/visas-news/exceptions-to-p-p-10014-10052-suspending-entry-of-immigrants-non-immigrants-presenting-risk-to-us-labor-market-during-economic-recovery.html (last visited Oct. 15, 2020).

necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In weighing a motion to dismiss, a court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ARGUMENT[2]

## I.    **Plaintiffs Lack Standing and the Court Lacks Subject Matter Jurisdiction**

To satisfy the "'irreducible constitutional minimum' of standing" under Article III, a plaintiff must demonstrate that he has: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61).  Here, Plaintiffs have not alleged a plausible injury in fact that is likely to be redressed by a ruling of this Court.

First and foremost, Plaintiffs are in possession of valid immigrant visas.  Am. Compl. ¶ 19.  Second, Plaintiffs have not been barred entry to the United States.  The entry restrictions

---

[2] The Court ordered Plaintiffs to show cause why the original action should not be dismissed.  *See* Minute Order, Sept. 24, 2020.  Plaintiffs never showed cause why the original action should not be dismissed.  Instead, Plaintiffs filed an amended complaint changing its theory of liability.  Rule 15 allows a party to amended without the opposing party's written consent or leave of court at one of only three times: within 21 days of serving the original complaint, 21 days after service of a responsive pleading, or 21 days after service of a motion under Rule 12(b), (e), or (f).  Because Plaintiffs did not file within any of these three windows of time, Plaintiff's amended complaint is improper.

pursuant to the proclamations are set to expire on December 31, 2020, a little over two months from the date of this filing. *Id.* ¶ 24; *see also* 85 Fed. Reg. at 38,264. Plaintiffs' diversity visas are valid for nearly six months from the date of issuance, which means Plaintiffs may still use these visas up to March 10, 2020. *Id.*, Ex. B (ECF No. 8-2). Plaintiffs have not been barred entry at the border and have not alleged travel plans that would potentially subject them to being barred entry. The possibility of an alien being denied entry is insufficient to confer standing. *Cf. Pai v. U.S. Citizenship & Immigr. Servs.*, 810 F. Supp. 2d 102, 106-07 (D.D.C. 2011) (being deprived the opportunity to immigrate is insufficient for beneficiary of denied immigrant petition to have standing).

To the extent there are allegations in the Amended Complaint suggesting injury, they are not plausible. For example, Plaintiffs allege "[a] visa that is subject to Presidential Proclamation 10014 that does not also carry the National Interest Exception is of no value as it would not allow said visa holder to enter the U.S." Am. Compl. ¶ 29. This statement is contradicted by the other allegations, as noted above. Similarly, Plaintiffs allege "Defendants refuse to provide information as to when, if ever, they will be allowed to enter the U.S." *Id.* ¶ 30. This too is contradicted by Plaintiffs' own pleading. Plaintiffs also assert that "[w]ithout intervention by the Court, Plaintiff will not be able to come to the U.S." *Id.* ¶ 31. All of these allegations are without factual basis and contradicted by the face of Proclamation 10014, as extended by Proclamation 10052, which states an expiration date of December 31, 2020, and the present ability to enter from January 1, 2021, through March 10, 2021. *See* Am. Compl. ¶ 24, Ex. B. Accordingly, such counterfactual statements cannot plausibly plead injury in fact. *See Haynes v. Navy Fed. Credit Union*, 825 F. Supp. 285, 291 (D.D.C. 2011) (failure to state plausible claim for breach of contract insofar as it rests on a factual predicate contradicted by the language of the agreement).

Furthermore, granting Plaintiffs' requested relief is not likely to redress any injury, assuming one was plausibly alleged.  To establish redressability, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal citations and quotations omitted); *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663-64 (D.C. Cir. 1996) ("Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff.").  Plaintiffs seek injunctive relief in the form of a court order that Defendants "complete the processing of Plaintiff's request for the National Interest Exception."  Am. Compl. at 11, Prayer for Relief.  The "processing" of Plaintiffs' request for a NIE exception has already been completed.  *See* Declaration of Evangeline Howard ("Howard Decl.") ¶¶ 7-9, enclosed herewith.

## II.  Plaintiffs Fail To State a Claim

### A.  Plaintiffs' Claims Are Barred By the Doctrine of Consular Nonreviewability

Although split into three claims, Plaintiffs are seeking one thing—judicial review of the consular officer's decision not to determine that they are eligible for a discretionary national interest exception to Proclamation 10014 as extended by Proclamation 10052.  The Court's review is plainly barred by the doctrine of consular nonreviewability.  As stated by this Circuit, "the doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999).  And yet, that is what Plaintiffs seek here; a judicial review of the decision to issue a diversity visa subject to the Proclamation 10014.

The doctrine tracks the INA, which confers "upon consular officers [the] exclusive authority to review applications for visas." *Id*. at 1156–57.  The doctrine is consistent with long-standing precedent that matters of "policy toward aliens are . . . so exclusively entrusted to the

political branches of government as to be largely immune from judicial inquiry or interference."
*Id*. at 1159 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952)) (internal quotation
marks omitted); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)
("[I]t is not within the province of any court, unless expressly authorized by law, to review the
determination of the political branch of the Government to exclude a given alien.").

An APA challenge based on a consular official's visa decision falls well within the scope
of the consular nonreviewability doctrine, as interpreted by the D.C. Circuit.  *See Saavedra Bruno*,
197 F.3d at 1162; *see also Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 6 (D.D.C. 2009)
(holding that the APA "provides no basis for challenging consular visa decisions").  Thus, in terms
of a plaintiff's right of review under the APA, "the doctrine of consular nonreviewability—the
origin of which predates passage of the APA"—constitutes a limitation on judicial review.
*Saavedra Bruno*, 197 F.3d at 1160.

To avoid this result, Plaintiffs make the counterfactual allegation that the doctrine does not
apply because "Defendants have not made a final determination on Plaintiff's visa application."
Am. Compl. ¶ 38.  Except that Defendants have made a final determination—the proof is in the
possession of Plaintiffs and was shared with this Court in Exhibit B to the Amended Complaint.
As further confirmed in the Howard Declaration, State issued the visas after consideration of the
national interest exception to the proclamation.  The Assistant Secretary for Consular Affairs, to
whom authority for determining national interest exceptions was delegated under Proclamation
10014, declined to find that Plaintiffs' entry would be in the national interest.  Howard Decl. ¶¶ 7-
8.  Accordingly, the consular officer at the U.S. Embassy in Beirut issued a diversity visa on
September 17, 2020, that was subject to Proclamation 10014 as extended by Proclamation 10052.
*Id*. ¶ 9. Given the facts as alleged and confirmed by the Howard Declaration, the doctrine of

consular nonreviewability controls and compels the conclusion that Plaintiffs' claims cannot be maintained.

### B.      Plaintiffs fail to state claims under the APA

Even if Plaintiffs had standing and their claims were not barred by the doctrine of consular nonreviewability, the Amended Complaint does not state actionable claims under the APA.

To begin, both APA claims should be dismissed because they seek to challenge a discretionary decision whether to grant a national interest exception.  The APA excludes from judicial review "agency action committed to agency discretion."  5 U.S.C. § 701(a)(2); *see also People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1097 (D.C. Cir. 2015) ("[A] party must first clear the hurdle of [section] 701(a), which prohibits judicial review of agency action to the extent that . . . agency action is committed to agency discretion by law.") (internal quotation marks omitted).  In this case, there is no separate statute giving an applicant the right to a waiver of the proclamation's restrictions or the right to have a waiver application adjudicated in a certain manner.  Instead, exceptions or waivers are governed solely by the Proclamation, and Proclamation 10014 states explicitly that a national interest exception is at the "discretion" of the consular officer.  Proclamation 10014, § 3(a).

Under similar circumstances, courts in this District have declined to find an actionable APA claim for challenges to the process for adjudicating exceptions or waivers to presidential proclamations restricting entry.  *See Kangarloo v. Pompeo*, Civ. A. No. 20-00354, 2020 WL 4569341, at *5 (D.D.C. Aug. 7, 2020) (concluding that waiver process under proclamation is "likely . . . unreviewable under the APA"); *Joorabi v. Pompeo*, Civ. A. No. 20-108, 2020 WL 2527209, at *5 (D.D.C. May 17, 2020) (holding there is no legally cognizable APA claim because the proclamation "makes it abundantly clear that it does not create 'any right or benefit, substantive or procedural' against the government"); *Jafari v. Pompeo*, Civ. A. No. 19-1819, 2020 WL

2112056, at *4 (D.D.C. May 3, 2020) (reasoning there is no review under APA because proclamation commits waiver process to agency's discretion).

    1.   <u>Count I</u>

    Even if judicial review were available, the Amended Complaint fails to state plausible APA claims.  Count I purports to allege a "substantive violation" of the APA but is fatally vague as to the nature of that violation.  In general, the APA allows for judicial review of "final agency action."  5 U.S.C. § 704.  The "final agency action" requirement involves two discrete inquiries.  First, Plaintiffs must identify an "agency action."  The APA defines "[a]gency action" to "include[] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  *Id*. § 551(13).  "'[A]s their definitions make clear,'" "[t]he five listed categories—and their equivalent or the denial thereof—all 'involve circumscribed, discrete agency actions[.]'"  *CREW v. DHS*, 387 F. Supp. 3d 33, 48–49 (D.D.C. 2019) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004)).  Second, the challenged agency action must be "final."  An "agency action" is "final" if it (1) "mark[s] the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and (2) "[is] one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted).

    The Amended Complaint does not sufficiently allege final agency action.  Instead, it states vaguely that "Defendants have taken actions to implement the Proclamation, including preparing to notify visa applicants and consular officials of new requirements that may result in a direct impact on the rights of qualified prospective immigrants and constitute final agency action(s) within the meaning of the Administrative Procedure Act."  Am. Compl. ¶ 40.  It is not at all evident, even considering the entirety of the Amended Complaint, what Plaintiffs contend to be the challenged final agency action.

Count I also fails because it does not plausibly allege a violation under 5 U.S.C. § 706. The Amended Complaint states that "Defendants' actions constitute violations of the APA in that there is no guidance for consular officials in how to process" NIE requests, Am. Compl. ¶ 41, but this allegation is not linked to any of the grounds for unlawful agency action under § 706. Moreover, Plaintiffs are aware that guidance is posted on State's website. *See supra* note 1. The Amended Complaint also asserts that "Defendants have informed consular officials to refuse to actually process" NIE requests. Am. Compl. ¶ 41. This allegation is also not tied to any grounds for unlawful agency action under § 706 and is also inconsistent with the allegations that the embassy in Beirut was processing the request.[3] *Id*. ¶ 16-17.

In sum, Count I is a fatally vague claim that fails to allege specific facts challenging a final agency action that is unlawful under the criteria of the APA's judicial review provision at § 706.

### 2.   Count III

In Count III, Plaintiffs purport to allege a violation of § 706(2)(D) of the APA as a consequence of Defendants' failure to engage in formal rulemaking. To state a claim under § 706(2)(D), a plaintiff must allege "final agency action" that was taken "without observance of procedure required by law," which as alleged is notice and comment rulemaking. The APA, through § 553, requires only "legislative rules" be subject to formal, notice and comment rulemaking. *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 320-21 (D.C. Cir. 2011). "[L]egislative rules are those that grant rights, impose obligations, [ ] produce other significant effects on private interests, or . . . effect a change in existing law or policy." *Am. Tort Reform Ass'n v. OSHA*, 738

---

[3] Towards the end of the pleading of Count I, the Amended Complaint states that "Defendants' refusal to follow the [NIE] . . . was made without observance of procedure required by law in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(D)." Am. Compl. ¶ 42. If Count I is meant to allege a violation § 706(2)(D), it is not clear how this claim is different than Count III.

F.3d 387, 395 (D.C. Cir. 2013) (internal quotation marks and citations omitted).  Section 553 excludes from formal rulemaking "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."  An agency action that merely "clarifies" the agency's interpretation of the legal landscape and that neither binds the agency nor "create[s] a new burden" on regulated entities is not a legislative rule.  *See Catawba Cnty. v. EPA*, 571 F.3d 20, 34 (D.C. Cir. 2009); *see also United Techs. Corp. v. EPA*, 821 F.2d 714, 718 (D.C. Cir. 1987).  In distinguishing between legislative and non-legislative rules, courts consider both the actual legal effects of the agency action and the agency's characterization of the action, *see Nat. Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014), though agencies cannot "avoid notice and comment simply by mislabeling their substantive pronouncements," *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019).

The Amended Complaint offers no factual allegations identifying the "law" or "legislative rule" that is being changed, which could arguably trigger the need for formal rulemaking.  Instead, the Amended Complaint alleges vaguely that the APA requires "agencies to conduct formal rulemaking before engaging in action that impacts substantive rights."  Am. Compl. ¶ 55.  It does not clearly identify the "action" that requires rulemaking, but the subsequent paragraph suggests the "action" is the application of the NIE "without guidance."  *Id*. ¶ 56.  It also does not clearly identify the "substantive rights" that are impacted by the "action."  The same paragraph only alleges that "Defendants will have changed the substantive criteria by which individuals who qualify for the Exception may enter the United States."  *Id*.  The foregoing does not state a violation of Section 706(2)(D) of the APA.

But if one assumes that Count III is intending to allege that NIE criteria should have been established through formal rulemaking, this claim falls short of alleging a law or legislative rule

that is being changed.  The Presidential Proclamations, which are not being challenged,[4] provide

for an exception to the suspension of entry, if "entry would be in the national interest, as

determined by the Secretary of State, the Secretary of Homeland Security, or their respective

designees."  This determination is a discretionary decision: "The consular officer shall determine,

in his or her discretion, whether an immigrant has established his or her eligibility for an exception

in section 2(b) of this proclamation." 85 Fed. Reg. at 23,443 (quoting Proclamation 10014, § 3(a)).

To assist the public and provide guidance as to what may qualify as circumstances "in the national

interest," State provides on its website a "non-exclusive list of the types of travel that may be

considered to be in the national interest."  It does not grant any rights, create any obligations, bind

the agency or applicants, or create new burdens that did not already exist in the proclamations

themselves.  As such, the guidance does not constitute a "legislative rule."  *See Cement Kiln*

*Recycling Coal. v. EPA*, 493 F.3d 207, 227-28 (D.C. Cir. 2007) (holding hazardous waste risk

assessment guidance document was not a legislative rule because it was not treated as binding on

the EPA and did not command or dictate action of private parties).

The guidance provided on the website is the type of "informal communications between

agencies and their regulated communities that are vital to the smooth operation of both government

and business."  *Valero Energy Corp. v. EPA,* 927 F.3d 532, 538 (D.C. Cir. 2019). Indeed, this

Court has long treated as non-final and thus not judicially reviewable (much less subject to notice-

---

[4] The Supreme Court has upheld the President's statutory authority to issue entry restrictions under
8 U.S.C. § 1182(f). *Trump v. Hawaii*, 138 S. Ct. 2392, 2408 (2018) (holding that the "plain
language of [INA] § 1182(f) grants the President broad discretion to suspend the entry of aliens
into the United States … based on his findings … that entry of the covered aliens would be
detrimental to the national interest.").  In addition, the Court cannot review Presidential actions,
such as Presidential Proclamations 10014 and 10052, under the APA. *Franklin v. Massachusetts*,
505 U.S. 788, 801 (1992) (the President's actions "are not subject" to the requirements of APA);
*see also Dalton v. Specter*, 511 U.S. 462, 468 (1994) ("The APA does not apply to the President").

and-comment rulemaking) such informal communications that merely state the agency's view of the law.  *Id.*; *see also Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 945 (D.C. Cir. 2012) (FDA advisory or warning letters posted on website did not reflect final agency decision-making); *AT&T v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001) (EEOC letter of determination expressing its views of AT&T's conduct was not final agency action).  Treating guidance, like that offered by State as to what would potentially satisfy a national interest exception, as judicially reviewable "would have the undesirable consequence of discouraging agencies from issuing clarifying documents."  *Valero Energy*, 927 F. 3d at 538.  For the foregoing reasons, Count III fails to state a claim under the APA.

### C.    Plaintiffs fail to state a due process claim

As discussed above, the doctrine of consular nonreviewability precludes consideration of Plaintiffs' claims.  Courts have, however, recognized narrow exceptions to this doctrine.  One exception potentially exists if a constitutional violation is alleged.  *See Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972).  Therefore, to determine if there is an exception to the doctrine, one much review the Amended Complaint to identify the interest that is allegedly protected by the Constitution.  Because Count II suffers from the same vagueness problems as the other two counts, the interest is not clear.  The Amended Complaint alleges that Congress has "created statutory rights related to the petitioning for and issuance of visas" and federal agencies have "created regulatory rights related to the petitioning for and issuance of visas."  Am. Compl. ¶¶ 48-49.  The statutory and regulatory rights are not identified.  Then the Amended Complaint alleges that individuals "must be given due process prior to the deprivation" of these unidentified rights.  *Id.* ¶ 50.  "Defendants' actions," again not explicitly identified, allegedly deprived Plaintiffs of the "aforementioned [unidentified] statutory and regulatory rights . . . without any due process."  *Id.* ¶ 51.  Finally, the Amended Complaint offers a concrete allegation related to this case when it

states that the Proclamation has "no provisions to appeal or challenge the Defendants' refusal to issue a visa that would actually allow the Plaintiffs to enter the U.S." *Id.* ¶ 52.  Plaintiffs, however, possess no constitutionally-protected interest in an appeal of State's visa decision.

Pleading deficiencies aside, Count II fails because it is established law that "the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States." *Kiyemba v. Obama*, 555 F.3d 1022, 1026 (D.C. Cir. 2009) (citing cases), *vacated*, 559 U.S. 131 (2010), *and judgment reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010).  None of the Plaintiffs outside of the United States have a liberty or property interest in obtaining a diversity visa because the Fifth Amendment does not apply to them.  *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990); *see Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020) (recognizing that "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U. S. Constitution").  The Supreme Court "has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."  *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Rafeedie v. I.N.S.*, 880 F.2d 506, 520 (D.C. Cir. 1989) (holding an applicant for initial entry "has no constitutionally cognizable liberty interest in being permitted to enter the United States").  Such an applicant does not have a liberty or property interest in a visa or even "a constitutionally-protected interest in the procedures by which such visas are obtained." *Tingzi Wang v. U.S. Citizenship & Immigr. Servs.*, 375 F. Supp. 3d 22, 41 (D.D.C. 2019) (citing *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011), *aff'd.*, 487 F. App'x 582 (D.C. Cir. 2012)).  As such, Plaintiffs' procedural due process claim must fail as a matter of law.

## CONCLUSION

Defendants respectfully request the Amended Complaint be dismissed for the reasons stated above.


Dated: October 21, 2020                     Respectfully submitted,

                                            MICHAEL R. SHERWIN
                                            Acting United States Attorney

                                            DANIEL F. VAN HORN, D.C. Bar #924092
                                            Chief, Civil Division

                            By:             */s/ Sean M. Tepe*
                                            SEAN M. TEPE, DC Bar #1001323
                                            Assistant United States Attorney
                                            555 Fourth St., N.W.
                                            Washington, D.C. 20530
                                            (202) 252-2533
                                            sean.tepe@usdoj.gov

                                            *Counsel for Defendants*

16